IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| D.A., : | |
| : | |
| Plaintiff, : | Civil No. 21-16454 (RBK/SAK) |
| : | |
| v. : | **OPINION** |
| : | |
| FINISH LINE, INC., *et al.*, : | |
| : | |
| Defendants. : | |

**KUGLER**, United States District Judge:

Presently before this Court is Defendant Finish Line, Inc.'s Motion to Dismiss ("Motion") (ECF No. 32) certain claims in Plaintiff D.A.'s Amended Complaint ("Complaint") (ECF No. 31) pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's Motion is **DENIED IN PART AND GRANTED IN PART**.

**I.    BACKGROUND**

Plaintiff D.A., a New York citizen, brings this action against Defendants Finish Line, Inc., an Indiana corporation, fictitious individuals John Does 1–10, and fictitious corporations XYZ Corp 1–10 over alleged sexual abuse that occurred while Finish Line employed D.A. (Complaint, ECF No. 31, ¶ 2).

D.A. is a 34-year-old male who resides in Brooklyn, New York. (*Id.* ¶ 5). Finish Line owns and operates retail stores that sell footwear and apparel throughout the country, including several locations in New Jersey. (*Id.* ¶ 7). In June 2003, at the age of sixteen, D.A. alleges he entered a Finish Line store located in the Deptford Mall. (*Id.* ¶ 10–11). D.A. claims that a Finish Line employee, purportedly named David, approached him and informed him of an employment

opportunity at the store, then provided D.A. with an application. (*Id*. ¶¶ 11–16). David was allegedly the "Assistant Manager and/or Supervisor" of Finish Line's Deptford Mall store. (*Id*. ¶ 13). After an interview, David apparently offered D.A. the job, and D.A. accepted. (*Id*. ¶¶ 17–19). D.A. then started working for Finish Line at the Deptford Mall store. (*Id*. ¶¶ 16–20).

Soon after starting, D.A. alleges he received calls and texts from David outside of work hours. (*Id*. ¶ 43). David also allegedly determined D.A.'s work schedule. (*Id*. ¶ 45). During D.A.'s shifts, there were usually three employees: David, D.A., and one other employee. (*Id*. ¶ 47). D.A. claims that after his first few weeks of employment, David began sending the third employee home around closing time, leaving D.A. and David alone to finish closing the store. (*Id*. ¶ 48). David would then ask D.A. to join him in the "men's stock room and/or the manager's office." (*Id*. ¶ 49). The first few times this happened, David allegedly kissed D.A. on his mouth and various parts of his body. (*Id*. ¶ 50). D.A. claims that David then forced D.A. to perform oral sex on him multiple times. (*Id*. ¶ 51). Eventually, in August 2003, D.A. claims David pinned him to a wall and raped him by forcibly penetrating his anus as he struggled to get free. (*Id*. ¶¶ 55–56). David purportedly continued to rape D.A. until he ejaculated. (*Id*. ¶ 57). All of this happened, D.A. alleges, while D.A. was still a minor. (*Id*. ¶ 52). As a result of this trauma, D.A. alleges that he experienced terrible physical pain, fear, anxiety, and emotional distress. (*Id*. ¶ 56).

D.A. brings claims for (1) sexual harassment and hostile work environment under the New Jersey Law Against Discrimination (NJLAD) seeking compensatory damages, punitive damages, and equitable relief; (2) common law negligence; and (3) negligent infliction of emotional distress ("NIED"). (*Id*. ¶¶ 78–82, 105–107, 111). Finish Line moves to dismiss D.A.'s NJLAD claim for equitable relief pursuant to Federal Rule of Civil Procedure 12(b)(1). (Motion, ECF No. 32, at 16). Finish Line also moves to dismiss D.A.'s NJLAD claim for punitive

damages, the negligence claim, and the NIED claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which this Court can grant relief. (*Id.* at 9, 15–19). Finish Line does not seek to dismiss D.A.'s NJLAD claim for compensatory damages. (*Id.* at 2).

## II.  LEGAL STANDARD

### A.  Motion to Dismiss under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which a court may grant relief. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "take note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). Second, the Court should identify allegations that "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680, 129 S.Ct. 1937). "Threadbare recital of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

(quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937). "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

### B. Waiver

Failure to argue in response to a defendant's motion to dismiss when there is an opportunity to do so results in a waiver of that claim or argument. *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008). As such, courts in this District have consistently held that the failure to respond to a substantive argument to dismiss a count, when a party otherwise files an opposition, results in a waiver of that count. *See Griglak v. CTX Mortg. Co., LLC*, No. 09-5247MLC, 2010 WL 1424023 at *3 (D.N.J. Apr. 8, 2010) (citing *Duran v. Equifirst Corp.*, No. CIV.A. 2:09-CV-03856, 2010 WL 918444 (D.N.J. Mar. 12, 2010)); *Wyndham Constr., LLC v. Columbia Cas. Ins. Co.*, 208 F. Supp. 3d 599, 603 (D.N.J. 2016) ("Plaintiff's silence is telling and is read as waiver[.]"); *L.B. v. Roselle Bd. of Educ.*, No. 218CV11588KSHCLW, 2021 WL 1961331 at *5 (D.N.J. May 14, 2021).

## III. DISCUSSION

### A. NJLAD Punitive Damages Claim (Count I)

Finish Line moves to dismiss D.A.'s NJLAD punitive damages claim, arguing that D.A. does not allege that a member of Finish Line's "upper management" was aware of the alleged abuse, participated in it, or was willfully indifferent to it. We disagree.

To reach the punitive damages claim question, the Court must first determine whether D.A. has adequately pled an NJLAD claim in the first place. Under NJLAD, to state a claim for a hostile work environment, D.A. must "allege conduct that occurred because of [his protected category] and that a reasonable [person] would consider sufficiently severe or pervasive to alter

4

the conditions of the employment and create an intimidating, hostile, or offensive working environment." *Thomas v. Town of Hammonton*, 351 F.3d 108, 116 (3d Cir. 2003) (citing *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 626 A.2d 445 (1993)). To do so, D.A. must satisfy four elements: "the complained-of conduct (1) would not have occurred *but* for the employee's [protected category]; and it was (2) *severe or pervasive* enough to make a (3) *reasonable* [person] believe that (4) the conditions of employment are altered, and the *working environment is hostile or abusive*. *Id*. (emphasis in original).

      D.A. alleges that this conduct occurred because of his age, which is a protected category under NJLAD. (*Id*. ¶ 52); N.J. STAT. ANN. § 10:5-12 (West 2009). To show this, D.A. must demonstrate "by a preponderance of the evidence that [he] suffered discrimination because of [his age]." *Lehmann*, 626 A.2d at 454 (1993) (alleging hostile work environment based on sex). The *Lehmann* court further explained that "[c]ommon sense dictates that there is no LAD violation if the same conduct would have occurred regardless of the plaintiff's [protected category]. For example, if a supervisor is equally crude and vulgar to all employees, regardless of their sex, no basis exists for a sex harassment claim." *Id*.

      Here, D.A. alleges that the Assistant Manager approached him about the job when he was sixteen years old. (Complaint, ECF No. 32, ¶ 11). A few weeks after starting the job, the Assistant Manager allegedly isolated and sexually assaulted D.A. on multiple occasions. All of this happened while D.A. was still a minor. Although the Complaint does not discuss the relative ages of other employees and how the Assistant Manager treated them, taking the above-stated facts as true, D.A. still alleges sufficient facts to demonstrate that but for his age, the alleged conduct would not have occurred. According to the Complaint, the Assistant Manager specifically came up to and targeted the then-sixteen-year-old D.A. Thus, it is plausible that the

5

Assistant Manager sexually assaulted D.A. and created the hostile work environment because he was a minor.

Further, as to elements two through four, there is no dispute that the alleged conduct was severe or pervasive enough to cause a reasonable person to believe that the working environment was hostile and abusive. D.A. alleges that after a few weeks of employment, the Assistant Manager isolated and sexually assaulted him on multiple occasions. (Complaint, ECF No. 32, ¶¶ 49–51). According to D.A., the Assistant Manager started by kissing D.A. and forcing him to perform oral sex. *Id*. Eventually, D.A. claims the Assistant Manager forcibly raped him. (*Id*. ¶¶ 55–58). These allegations plainly satisfy elements two through four, and, therefore, D.A. has adequately pled an NJLAD hostile work environment and sexual harassment claim.

To receive punitive damages under NJLAD, D.A. must satisfy two additional requirements. First, he must show upper management's actual participation in, or willful indifference to, the wrongful conduct. *Boles v. Wal-Mart Stores, Inc.*, 650 F. App'x 125, 129 (3d Cir. 2016) (citing *Cavuoti v. New Jersey Transit Corp.*, 161 N.J. 107, 735 A.2d 548 (1999)). Second, he must demonstrate evidence that the wrongful conduct is especially egregious. *Id.*

An employee "on the second tier of management" is upper management "if he or she possesses either: '(1) broad supervisory powers over the involved employees, including the power to hire, fire, promote[,] and discipline; or (2) the delegated responsibility to execute the employer's policies to ensure a safe, productive[,] and discrimination-free workplace.'" *Mancuso v. City of Atl. City*, 193 F. Supp. 2d 789, 808 (D.N.J. 2002) (quoting *Cavuoti v. New Jersey Transit Corp.*, 161 N.J. 107, 129, 735 A.2d 548, 561 (1999)). In *Cavuoti*, the Supreme Court of New Jersey found that the focus of the upper management question is whether the employee "controlled the day-to-day operations . . . ; could hire, fire[,] and discipline employees; and set

6

the atmosphere of work." 161 N.J. at 131, 735 A.2d at 562 ("If conduct only by [the] uppermost-tier of employees constituted conduct of [the defendant], the LAD would, for all practical purposes, be inapplicable to [the defendant].").

Finish Line moves to dismiss D.A.'s punitive damages claim because D.A. fails to allege upper management involvement. Finish Line argues that D.A. does not allege that Finish Line's upper management was aware of the alleged abuse, or "that it actually participated or was willfully indifferent[.]" (Motion, ECF No. 32, at 20–21). Finish Line further argues that D.A.'s characterization of the alleged Assistant Manager as upper management "relies on conclusory allegations regarding the employee's status[.]" (Def. Reply Br., ECF No. 34, at 9). To bolster this argument, Finish Line points to D.A.'s interchanging reference to the alleged perpetrator as Assistant Manager in the Complaint and Manager in his Response in Opposition ("Opposition") (ECF No. 33) as evidence that D.A. lacks factual allegations to support such a characterization. *Id*.

Finish Line's argument falls short because D.A. pleads specific factual allegations about the alleged Assistant Manager's status and responsibilities that, when taken as true, demonstrate that the Court should consider the Assistant Manager part of Finish Line's upper management. D.A. pleads that the Assistant Manager—the alleged perpetrator—interviewed and offered him the job. (Complaint, ECF No. 32, ¶¶ 17–18). Additionally, D.A. pleads that the Assistant Manager determined the work schedule for store employees and sent other employees home during "closing time" so he could be alone with D.A. (*Id.* ¶¶ 45, 48).

Finish Line's focus on the alleged perpetrator's title misses the mark. Regardless of his title, the key is whether he had broad supervisory powers over D.A. *See Cavuoti*, 161 N.J. at 130–31, 735 A.2d at 562. D.A. pleads that the Assistant Manager had the power to hire him, and

it is therefore a reasonable inference that he could have fired him. Similarly, D.A. claims the Assistant Manager determined when D.A. and other employees worked at the store. At any given time, the Assistant Manager had control over which employees were present at this store. Based on these facts, it is plausible that the Assistant Manager controlled the store's day-to-day operations and set the work atmosphere. Thus, D.A. has adequately pled that the Assistant Manager was an upper-management employee.

D.A.'s claims easily meet the second punitive damages requirement. Rape and repeated sexual assault are clearly especially egregious behavior. *See Joyce v. City of Sea Isle City*, Civil No. 04-5345, 2008 WL 906266, at *25 (D.N.J. Mar. 31, 2008) ("To constitute especially egregious conduct, the alleged misconduct must have been 'wantonly reckless or malicious' and there must be 'an intentional wrongdoing in the sense of an evil-minded act or an act accompanied by a wanton and willful disregard of the rights of another.'") (quoting *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 477 A.2d 1224, 1230 (N.J. 1984)).

Accordingly, Finish Line's motion to dismiss D.A.'s NJLAD punitive damages claim is denied.

### B.     Common Law Negligence and NIED Claims (Counts II and III)

Finish Line also moves to dismiss D.A.'s negligence and negligent infliction of emotional distress claims (Counts II and III). Finish Line argues that D.A.'s injuries were in no way foreseeable to Finish Line—and, thus, Finish Line owed him no duty—and, either way, the Assistant Manager's alleged conduct was outside the scope of his employment. (Motion, ECF No. 32, at 9–16). This Court, however, need not reach those issues because the New Jersey Workers' Compensation Act (the "Act") forecloses Counts II and III of D.A.'s Complaint.

"Under New Jersey's workmen's compensation scheme, N.J. Stat. Ann. § 34:15–1, *et seq.*, an employee's exclusive remedy against [his] employer for ordinary work injuries is a statutory remedy without regard to fault. In return, the employee forgoes a common law tort remedy." *Roma v. United States*, 344 F.3d 352, 363 (3d Cir. 2003) (quoting *Gore v. Hepworth*, 316 N.J. Super. 234, 720 A.2d 350 (App. Div. 1998)) (internal quotations omitted); *see* N.J. Stat. Ann. § 34:15-8 (acceptance of workers' compensation "shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof"). The only exception to this exclusive remedy is an intentional wrong. N.J. Stat. Ann. § 34:15–8 ("If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, *except for intentional wrong*.") (emphasis added); *see Roma*, 344 F.3d at 364 n.6.

An ordinary work injury is a personal injury "caused to an employee by accident arising out of and in the course of his employment, of which the actual or lawfully imputed negligence of the employer is the natural and proximate cause[.]" N.J. Stat. Ann. § 34:15–1. New Jersey courts have "always defined the operational terms of the statute with great breadth." *Cremen v. Harrah's Marina Hotel Casino*, 680 F. Supp. 150, 153 (D.N.J. 1988). For example, courts have interpreted "accident" to encompass "all work-related episodes and events resulting in injury, and indeed all unexpected injuries." *Theodore v. Dover Board of Education*, 444 A.2d 60, 65 (N.J. Super. Ct. App. Div. 1982). They have even gone so far as to include "willful or criminal" assaults by coworkers and all injuries resulting from those assaults. *See Meo v. Commercial Can Corp.*, 192 A.2d 854, 856 (N.J. Super. Ct. App. Div. 1963).

The same is true for the phrases "in the course of" and "arising out of" the employment. An incident occurs "in the course of" employment simply when it happens "within the period of employment, at a place where the worker might reasonably be, and while [the worker] was performing her duties of employment 'or doing something incidental to it.'" *Cremen*, 680 F. Supp. at 153 (quoting *Tocci v. Tessler & Weiss, Inc.*, 28 N.J. 582, 586–87 (1959)).

Courts determine whether an incident arises out of employment using an "exceptionally liberal test of causal connection, . . . [which] requires only that the employment in some fashion physically facilitated the occurrence of the incident." *Id.* This "but-for" test means that if the work brought the alleged victim and perpetrator together or "created the relations and conditions which resulted in the clash," the incident arose out of the employment. *Id.*; *Martin v. J. Lichtman & Sons*, 42 N.J. 81, 83 (1964). This Court has previously held that a sexual assault which took place at work between coworkers, one of whom was the alleged victim's purported supervisor, arose out of the employment and plainly fell within the bounds of the Act. *Cremen*, 680 F. Supp. at 154.

When a claim falls within the Act's ambit, there exists only one escape: the Act permits an exception for an "intentional wrong." N.J. Stat. Ann. § 34:15–8. Those intentional wrongs may include physical harms and emotional harms, and a court may even impute an intentional harm caused by a coworker to an employer. *See id.* at 158–59 (holding that a plaintiff's alleged sexual assault and harassment by a coworker were "intentional wrongs" and she could pursue her battery and intentional infliction of emotional distress claims against her employer). Intentional wrongs, though, do not encompass negligence. *See id.* at 155–56 (holding that same plaintiff could not, though, pursue her negligent hiring and retention claims).

As such, the Act bars D.A.'s negligence and NIED claims. D.A. does not claim that Finish Line intentionally caused his injuries. Rather, Counts II and III of D.A.'s complaint "sound[] in negligence." *Cremen*, 680 F. Supp. at 155. Although intentional torts such as battery and intentional infliction of emotional distress might find refuge in the Act's intentional wrong exception, negligence claims do not. *See id.* at 155–59.

Accordingly, the Act bars D.A.'s negligence and NIED claims, and Finish Line's Motion to dismiss Counts II and III is granted.

### C. Waiver of NJLAD Equitable Relief Claim (Count I)

Finally, Finish Line moves to dismiss D.A.'s NJLAD equitable relief claim. (Motion, ECF No. 32, at 16). In D.A.'s Opposition, D.A. addressed Finish Line's arguments to dismiss his NJLAD punitive damages claim, his negligence claim, and his NIED claim, but he never addressed the arguments related to his NJLAD equitable relief claim. (*See generally* Opposition, ECF 33). As such, this Court must take D.A.'s silence as his answer—D.A. has waived his equitable relief claim. *Dreibelbis*, 274 F. App'x at 185.

Accordingly, the Court grants Finish Line's motion to dismiss D.A.'s NJLAD equitable relief claim.

### IV. CONCLUSION

For these reasons, Finish Line's Motion to Dismiss is **DENIED IN PART AND GRANTED IN PART**. As to Count I, Finish Line's motion to dismiss D.A.'s NJLAD claim for equitable relief is **GRANTED** and D.A.'s NJLAD equitable relief claim is **DISMISSED WITH PREJUDICE**; Finish Line's motion to dismiss D.A.'s NJLAD claim for punitive damages is **DENIED**; and D.A.'s NJLAD claim for compensatory damages remains uncontested and intact. As to Counts II and III, Finish Line's motion to dismiss D.A.'s negligence (Count II) and NIED

(Count III) claims is **GRANTED** and Counts II and III of D.A.'s Complaint are **DISMISSED WITH PREJUDICE**. D.A. may proceed on Count I alone, for both compensatory and punitive damages.


Dated: October 14, 2022                                    /s/ Robert B. Kugler
                                                           ROBERT B. KUGLER
                                                           United States District Judge